UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-14002-CR-ROSENBERG

UNITED STATES OF
AMERICA, Plaintiff,

      v.

JULIUS REASON III,
NATASHA THAMES,
VENTERIA REASON

Defendants,
_____/

**ORDER ON OBJECTIONS TO RATIO FOR DIBUTYLONE HCI AND ETHYLONE**

This cause is before the Court upon Defendants', Julius Reason III, Natashia Thames and Venteria Reason, Objections (DE 196, 175 and 177, respectively) to the Presentence Reports ("PSI") (DE 215, 186 and 208, respectively) and, specifically, the following objections: Defendant Julius Reason's Objections (DE 196, para. 4) to paragraphs 61 and 62 of the PSI (DE 215) in which Defendant Julius Reason III "objects to the 500:1 ratio for Dibutylone HCI and Ethylone"; Defendant Natashia Thames' Objections (DE 175, para. 3) to paragraph 52 of the PSI (DE 186) in which Defendant Thames "objects to the ratio of dibuylone to marijuana (1 to 500)"; and Defendant Venteria Reason's Objections (DE 177, pg. 5) to paragraph 61 of the PSI (DE 208) in which Defendant Venteria Reason objects "to the 500:1 ratio for Dibutylone HCI and Ethylone." The Government filed its Post Hearing Memorandum Regarding the Marijuana Equivalency (DE 226). Defendant Venteria Reason filed her Post-Hearing Memorandum of Law Addressing Application of Sentencing Guidelines 2D1.1, Application Note Six, to Ethylone and Dibutylone (DE 225). Defendant Julius Reason III filed a Motion to Adopt Co-Defendant Venteria Reason's Post-Hearing Memorandum of Law Addressing Application of Sentencing Guidelines 2D1.1, Application Note Six (DE 227 and 229). The Court granted this motion on February 21, 2017 (DE 231). Defendant Natashia

1

Thames filed her Memorandum Regarding Defendant Natashia Thames' Position Regarding Dibutylone (DE 224).

The Court has reviewed the Objections and all pertinent portions of the record and is otherwise fully advised in the premises. For the reasons set forth below, the Court overrules the Defendants' Objections to the ratio for Dibutylone HCI and Ethylone and adopts the Government's position, accepted by the Probation Office in the PSIs as to Defendants Julius Reason III, Natashia Thames and Venteria Reason (DE 215-1, 186-1 and 208-1, respectively), that considering the three factors listed in the United States Sentencing Guidelines ("Guidelines" or U.S.S.G.") § 2D1.1 cmt. n.6 ("Application Note 6"), the controlled substance listed in the Drug Equivalency Tables that is most closely related to Ethylone is 3,4 methylenedioxy-N-ethylamphetamine ("MDEA"), in structure and effect, 1 gram of which is listed as equivalent to 500 grams of marijuana (the same ratio for MDMA); and that the controlled substance listed in the Drug Equivalency Tables that is most closely related to Dibutylone HCI is MDMA, in structure and effect, and 1 gram of which is listed as equivalent to 500 grams of marijuana.

On September 19, 2016, Defendant Julius Reason III pled guilty to Counts One and Two of a three-count Superseding Indictment. Count One charged conspiracy to import Dibutylone HCI, in violation of 21 U.S.C. § 963. Count Two charged conspiracy to manufacture, distribute and possess with intent to manufacture and distribute Dibutylone HCI, in violation of 21 U.S.C. § 846. On March 22, 2016, Defendant Natashia Thames pled guilty to a three-count Indictment. Count One charged conspiracy to import Dibutylone HCI, in violation of 21 U.S.C. § 963. Count Two charged conspiracy to manufacture and possess with intent to manufacture and distribute Dibutylone HCI, in violation of 21 U.S.C. § 846. Count Three charged possession with intent to distribute Dibutylone HCI, in violation of 21 U.S.C. § 841(a)(1). On September 21, 2016, Defendant Venteria Reason pled guilty to Count One of a three-count Superseding Indictment charging her with conspiracy to import Dibutylone HCI, in violation of 21 U.S.C. § 963.

The Court conducted a sentencing hearing on these Objections over two days, on January 31, 2017

(DE 216) and February 1, 2017 (DE 217). The primary disagreement between the parties with respect to Defendants' Objections is to which drug(s) within the Guidelines the Court should compare Dibutylone HCI (as to Defendants Julius Reason III, Natashia Thames and Venteria Reason) and Ethylone (as to Defendants Julius Reason III and Venteria Reason).  Dibuylone HCI and Ethylone are not referenced in U.S.S.G § 2D1.1, which provides the base level for drug offenses. When a controlled substance is not referenced in the Guidelines, the Court must "determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in the guideline."  Application Note 6.  In making that determination, "the court shall, to the extent practicable, consider:"

(A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance in this guideline.

(B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system, as a controlled substance referenced in this guideline.

The Government's position, accepted by the Probation Office in the PSIs as to Defendants Julius Reason III, Natashia Thames and Venteria Reason (DE 215-1, 186-1 and 208-1, respectively), is that considering the three factors listed in Application Note 6, the controlled substance listed in the Drug Equivalency Tables that is most closely related to Ethylone is 3,4 methylenedioxy-N-ethylamphetamine ("MDEA"), in structure and effect, 1 gram of which is listed as equivalent to 500 grams of marijuana (the same ratio for MDMA); and that the controlled substance listed in the Drug Equivalency Tables that is most closely related to Dibutylone HCI is MDMA, in structure and effect, and 1 gram of which is listed as equivalent to 500 grams of marijuana. (DE189). The Defendants disagree with the Government's proposed ratios, arguing instead that the Court find a marijuana to Dibutylone HCI ratio of less than 40:1 and perhaps less than 1:1 (according to Dr. Dudley;[1] see

---

[1] Defendants Julius Reason III and Venteria Reason, urge the Court to adopt, among the cathinones, Schedule One stimulant khat as the comparator for Dibutylone HCI which has a 100:1 ratio. (DE 225,

3

Defendants' Julius Reason III and Venteria Reason Exhibit 6, DE 178, Exhibit B, pg.28, "In my opinion, dibutylone is not *"substantially similar"* in chemical structure to any listed substance, and it should not be equated to any single listed substance. The diverse collection of amphetamines and cathinones discussed above provide context for making a logical and reasonable decision on an appropriate penalty for dibutylone.  The preponderance of the facts and considerations related to chemical structure as presented herein supports a ratio of less than 40:1 and perhaps less than 1:1 relative to the marijuana standard." ) and a ratio of 100:1 (according to Dr. DiCaprio; DE 224, pg. 7) and a marijuana to Ethylone ratio equal to, or slightly less than, methylone and at levels significantly lower than MDMA and MDEA, which are the most comparable substances in the Guidelines (Defendants' Julius Reason III and Venteria Reason Exhibit 6, DE 178, Exhibit C, pg. 49; and DE 225, pg. 10).  Defendants Julius Reason III and Venteria Reason argue that because the experts agree that Ethylone and Dibutylone HCI act (or in the case of Dibutylone HCI are expected to act) as stimulants, the Court should select a comparator that is a stimulant and not a hallucinogen, which is how the Guidelines categorize MDMA and MDEA. As such, these Defendants argue the Court should use the stimulants in Schedule I and II and the Guidelines ratios for stimulants as its guide (DE 225, pg.2). The Government must prove the contested facts by a preponderance of the evidence and satisfy this burden with both "reliable and specific evidence". *United States v. Gupta*, 572 F.3d 878, 887 (11th Cir. 2009).

In support of its position, on January 31, 2017 and February 1, 2017, the Government presented evidence through testimony from Dr. Daniel Willenbring and Dr. Jordan Trecki. Dr. Willenbring is a Drug Science Specialist with the Drug and Chemical Evaluation Section of the Diversion Control Division at the Drug Enforcement Agency ("DEA"); he was called to testify as to the first factor listed in U.S.S.G. § 2D1.1, Application Note 6 (A)—specifically, whether Ethylone and Dibutylone HCI have a

---

pgs. 5 and 8). Dr. Dudley testified that, in his opinion, the substance that is most similar in chemical structure to Ethylone is methcathinone (ratio of 1:380). He reasons that the cathinone classification is the most important relative to amphetamines; he looks at the cathinones, methcathinone and cathinone itself, which is ambiguously included under the khat plant coverage. (Transcript, Volume I, pg. 211, line 21 – pg. 212, line 16). The requested ratio in the Defendants' Post-Hearing Memorandum would appear to differ from Dr. Dudley's conclusion in his Expert Report (DE 178, Exhibit B, pg. 28) that "the ratio is less than 40:1 and perhaps less than 1:1" and his testimony at trial.

chemical structure that is substantially similar to a Controlled Substances Act Schedule I controlled substance referenced in the Sentencing Guidelines. Dr. Willenbring holds a Ph.D. in Organic Chemistry from the University of California at Davis and completed his doctoral fellowship at the University of Pittsburgh in the department of anesthesiology. Dr. Willenbring has worked at the DEA since January 1, 2013 (Government Exhibit 1). Dr. Willenbring testified, without objection, as the Government's expert in chemistry. He has testified and been accepted as an expert in chemistry in other federal proceedings throughout the country (Government Exhibit 2).

Dr. Willenbring's main responsibility at the DEA is to evaluate substances for their controlled status under the Controlled Substances Act. Dr. Willenbring rendered two expert opinions which are summarized in his Rule 16 Summary of Expert Opinion and Bases as to Ethylone and Dibutylone HCI (Government Exhibits 3 and 5, respectively). With respect to Ethylone, Dr. Willenbring opines that under the Guidelines, Ethylone is substantially similar in chemical structure to 3,4-methylenedioxy-N-ethylamphetamine (MDEA). Dr. Willenbring testified that the core structure of Ethylone and MDEA is phenethylamine and that each substance shares the same core chemical structure and are both substituted with the same substituents at the α-position, nitrogen (N) atom, and 3,4-positions. The differences between these two substances—that Ethylone has an additional substitution of an oxygen (O) atom (referred to as a ketone or carbonyl group) at the β-position of the phenethylamine core—is, according to Dr. Willenbring, a minor difference; therefore, he concludes within a reasonable degree of scientific certainty that Ethylone is substantially similar in chemical structure to MDEA, a Schedule I substance in the Guidelines (Government Exhibit 3).

With respect to Dibutylone HCI, Dr. Willenbring opines that under the Guidelines, Dibutylone HCI is substantially similar in chemical structure to 3,4-methylenedioxy-N-methylamphetamine (MDMA). Dr. Willenbring compared Dibutylone HCI to MDMA and went forward with that comparison. He did not, for example, make a similar evaluation of the similarity or lack thereof between Dibutylone HCI and methcathinone. (Transcript of Sentencing Hearing ("Transcript"), Volume I, pg. 82, lines 16-23). Dr. Willenbring acknowledged that while Dibutylone HCI can be substantially similar to

5

more than one substance, there was a consensus within his unit at the DEA that Dibutylone HCl be compared to MDMA (Transcript, Volume I, pg. 84, lines 11-15).

As with Ethylone, Dr. Willenbring testified that the core structure of Dibutylone HCl and MDMA is phenethylamine and that each substances shares the same core chemical structure and are both substituted as the α-position, nitrogen (N) atom, and 3,4-positions. The differences between these two substances—an oxygen atom (ketone) substitution (at the β-position) and two additional carbon units (at the α-position and nitrogen atom)—are, as Dr. Willenbring opines, minor in nature; accordingly, he concludes that Dibutylone HCl is substantially similar in chemical structure to MDMA, also a Schedule I substance in the Guidelines  (Government Exhibit 5).  In conclusion, the minor differences Dr. Willenbring  found when comparing Ethylone to MDEA and Dibutylone HCl to MDMA were "small changes, minor changes" and, in "the context of the whole substance, they were not significant" to his determination that they substantially similar to one another. (Transcript, Volume I, pg. 80, lines 1-10, DE 216). Dr. Willenbring testified that the type of modifications seen in Ethylone and Dibutylone HCl are of the type "usually to attempt to evade chemical control, a specific listing of substances." (Transcript, Volume I, pg. 47, lines 6-8, DE 216).  Mr. Willenbring, importantly, also testified that he cannot come to court and testify about the substantial similarity of chemical structures and present a Rule 16 expert report unless there is unanimous consensus as to that conclusion among the chemists in his unit. (Transcript, Volume I, pg. 78, lines 4-6, 14-22).

The Government next presented evidence through testimony from Dr. Jordan Trecki, a Pharmacologist with the Drug and Chemical Evaluation Section of the Diversion Control Division at the DEA; he was called to testify as to the second and third factors listed in U.S.S.G. §2D1.1, Application Note 6 (B) and (C)—specifically, whether Ethylone and Dibutylone HCl involve a stimulant effect on the nervous system that is substantially similar to a Controlled Substances Act Schedule I controlled substance referenced in the Sentencing Guideline whether the potency of these two substances is substantially similar to a Schedule I controlled substance referenced in the Guidelines.  Dr. Trecki holds a Ph.D. in Pharmacology from Temple University School of Medicine and was a post-doctoral research

fellow at Georgetown University Medical Center, Department of Neuroscience. Pharmacology is the study of how a drug will interact and affect the body (Transcript, Volume I, pg. 91, lines 1-2). Following his work at Georgetown University, Dr. Trecki worked as a toxicologist with the Environmental Protection Agency (EPA) for two years. Dr. Trecki has worked at the DEA since 2012 (Government Exhibit 6). Dr. Trecki testified as the Government's expert in pharmacology. He has testified as an expert in pharmacology in other federal proceedings throughout the country (Government Exhibit 7).

Dr. Trecki's main responsibility at the DEA is to research and report on various assigned licit or illicit substances. He belongs to a section of the DEA comprised of pharmacologists and, like Dr. Willenbring, his unit comes to a consensus and presents that opinion to the supervisors. (Transcript, Volume I, pg. 88, lines 23-25, pg. 89, lines 9-15, DE 216). Dr. Trecki rendered two expert opinions which are summarized in his Rule 16 Summary Reports as to Ethylone and Dibutylone HCI (Government Exhibits 8 and 9, respectively). With respect to Ethylone, Dr. Trecki opines that under the Sentencing Guidelines, the stimulant effects of Ethylone on the central nervous system are substantially similar to 3,4-methylenedioxy-N-ethylamphetamine (MDEA) and while Ethylone has been shown to be less potent in the drug discrimination assay than MDEA, the effects of Ethylone are substantially similar to MDEA. Dr. Trecki testified about in vitro or test tube studies that have been completed to support his opinion that Ethylone has a stimulant effect on the central nervous system (Transcript, Volume I, pg.123, lines19-22). Dr. Trecki described that Ethylone and MDEA inhibit various transmitters, such as dopamine transmitters, and that is consistent with both of the substances having a stimulant effect on the central nervous system. (Transcript, Volume I, pg. 123, line 23 – pg. 124, line 22). With respect to Dibutylone HCI, Dr. Trecki opines that under the Guidelines, the stimulant effects of Dibutylone HCI on the central nervous system are expected to be substantially similar to 3,4-methylamphetamine (MDMA). This was the first time that Dr. Trecki offered testimony with respect to Dibutylone HCI (Transcript, Volume I, pg. 96, lines 19-21). Dr. Trecki testified that in vivo studies have not yet been completed and thus, he relied upon the in vitro study and the case reports to form his opinion that Dibutylone HCI is expected to have a stimulant effect on the central nervous system that is substantially similar to that of MDMA (Transcript,

7

Volume I, pg. 130, line 17- pg. 131, line 8). Dr. Trecki acknowledged that potency cannot be determined from an in vitro study (Transcript, Volume I, pg. 143, lines 8-11). Dr. Trecki rendered his expert opinions within a reasonable degree of scientific certainty. (Transcript, Volume I, pg. 102, lines 9-11).

On January 31, 2017 and February 1, 2017, the Defendants presented evidence through the testimony of Dr. Gregory Dudley and Dr. Anthony DeCaprio. Dr. Dudley testified first on behalf of the Defendants Julius Reason III, Venteria Reason and Natashia Thames as to first factor listed in U.S.S.G. §2D1.1, Application Note 6(A) as to Dibutylone HCI—specifically, whether Dibutylone HCI has a chemical structure that is substantially similar to a controlled substance referenced in the Sentencing Guidelines. As to Defendants Julius Reason III and Venteria Reason, Dr. Dudley testified as to the first factor as it relates to Dibutylone HCI and Ethylone; he further testified on behalf of Defendants Julius Reason III and Venteria Reason as to the second and third factors listed in U.S.S.G. §2D1.1, Application Note 6 (B) and (C) regarding Ethylone only—specifically, whether Ethylone involves a stimulant effect on the nervous system that is substantially similar to a Controlled Substances Act Schedule I controlled substance referenced in the Guideline and whether the potency of Ethylone is substantially similar to a Schedule I controlled substance referenced in the Guidelines.

The Government objected to Dr. Dudley testifying as an expert in pharmacology.[2] The Court overruled the objection and permitted Dr. Dudly to render opinion testimony in chemistry and pharmacology. The Court did not rule that Dr. Dudley was to be designated as an expert witness in pharmacology; rather, it ruled that Dr. Dudley would be allowed to present opinion testimony and that the Court would consider the appropriate weight to afford Dr. Dudley's testimony in light of his background, education and experience. Although Dr. Dudley has been accepted by some courts as an expert in the field of pharmacology, the Government presented, through cross- examination of Dr. Dudley, that in certain cases in which he testified, Dr. Dudley was not found to be qualified by the court as an expert in pharmacology (Transcript, Volume II, pg. 34, line 9 – pg. 37, line 22).

---

[2] There was no objection to Dr. Dudley rendering expert testimony in the field of chemistry.

Dr. Dudley holds a Ph.D. in Organic Chemistry from the Massachusetts Institute of Technology and was a NIH Postdoctoral Fellow at the Sloan-Kettering Institute for Cancer Research from 2000-2002 (Defendants' Julius Reason III and Venteria Reason Exhibit 5, DE 210). Dr. Dudley does not hold a Ph.D. in Pharmacology.  Dr. Dudley did not pass any exams in pharmacology for his Ph.D.; his doctoral dissertation was in organic chemistry, not pharmacology; he has not taken exams in pharmacology; and he works in the area of chemical synthesis (Transcript, Volume II, pg. 30, line 11 – pg. 31, line 15). Dr. Dudley has been a professor at West Virginia University and Chair of the Department of Chemistry since 2016. Prior to joining the faculty of the University of West Virginia, Dr. Dudley began his career at Florida State University in 2002, where he became an Associate Professor with tenure in the Department of Chemistry and Biochemistry and had assumed Associate Chair responsibilities in these departments. (Transcript, Volume I, pg. 172, lines 14-25 and pg. 173, line 1, DE 216; Defendants' Julius Reason III and Venteria Reason Exhibit 5). Dr. Dudley has not conducted in vitro studies, in vivo studies or drug discrimination studies as part of his professional work. (Transcript, Volume II, pg. 63, line 12 – pg. 64, line 6).

Dr. Dudley rendered two opinions which are summarized in his "Expert Reports" as to Dibuylone HCI and Ethylone (Defendants' Julius Reason III and Venteria Reason Exhibit 6, DE 178, Exhibit B and C). With respect to Dibutylone HCI, Dr. Dudley opines that Dibutylone HCI is not "substantially similar" in chemical structure to a controlled substance listed in the Guidelines, and that its pharmacological effects on the human nervous system are not characterized well enough to make informed decisions. Dr. Dudley further opines that, at this time, it would not be scientifically appropriate to equate Dibutylone HCI with any listed substance (Defendants' Julius Reason III and Venteria Reason Exhibit 6, DE 178, Exhibit B). While Dr. Dudley notes that Dibutylone HCI incorporates a methylenedioxy (MD) ring, similar to MDMA, a ketone functional group, similar to methcathinone and a second N-methyl group, similar to dimethylamphetamine, he does not believe that it would be appropriate to designate any one of these comparable substances as "most comparable" and/or "substantially similar" to Dibutylone HCI in chemical structure.  Dr. Dudley testified that he would classify Dibutylone HCI with cathinones and

9

MDMA with amphetamines (Transcript, Volume II, pg. 23-2; pg. 205, lines 5-7). Because three of Dibutylone HCI's structural features are associated with downward adjustments in the marijuana equivalency ratios, and the fourth is hypothetically associated with reduced potency, Dr. Dudley opines that the marijuana equivalency ratio for Dibutylone HCI should be less than 40:1 and perhaps less than 1:1. (Defendants' Julius Reason III and Venteria Reason Exhibit 6, DE 178, Exhibit B, pg.28). With respect to Ethylone, Dr. Dudley opines that this substance should be sentenced at a level equal to, or slightly less than, methylone and that both Ethylone and methylone should be sentenced at levels significantly lower than MDMA and MDEA, which are the most comparable substances in the Guidelines (Defendants' Julius Reason III and Venteria Reason Exhibit 6, DE 178, Exhibit C). Dr. Dudley finds it hard to justify using a marijuana equivalency for methylone higher than 100:1 and given that Ethylone is "substantially similar to methylone in structure and that the early indications are that it is similar but less potent in its pharmacological activity, the marijuana equivalency of Ethylone should be less than or equal to that of methylone (Defendants' Julius Reason III and Venteria Reason Exhibit 6, DE 178, Exhibit C).

Defendant Natashia Thames, on her own behalf and on behalf of Defendant's Julius Reason III and Venteria Reason, next presented the testimony of Dr. Anthony DeCaprio. Dr. DeCaprio was called to testify as to the second and third factors listed in U.S.S.G. §2D1.1, Application Note 6 (B) and (C)—specifically, whether Dibutylone HCI involves a stimulant effect on the nervous system that is substantially similar to a Controlled Substances Act Schedule I controlled substance referenced in the Sentencing Guideline and whether the potency of Dibutylone HCI is substantially similar to a Schedule I controlled substance referenced in the Guidelines. Dr. DiCaprio is an Associate Professor of Chemistry and Biochemistry and serves as the Director of the Forensic and Analytical Toxicology Facility and the Forensic Certificate Program for the International Forensic Research Institute at Florida International University. He received his Ph.D. in Toxicology from Albany Medical College. He worked as a research scientist in human toxicology with the New York State Department of Health, Wadsworth Laboratories prior to his academic appointments at the University of Albany, the University of Massachusetts at Amherst and then, FIU. (Defendant Natashia Thames Exhibit 3, DE 193). Dr. DiCaprio opined that the

only way to know with certainty what the relative activity and potency of any two drugs is in humans is to conduct an experiment in humans and anything else is less reliable, and in some cases, much less reliable. (Transcript, Volume II, pg. 85, lines12-16, DE 217). Dr. DiCaprio opined that while in vitro studies are reliable, insofar as they are widely accepted in science for the purpose of generating early data, he does not think that they are adequate to answer the question of substantial similarity in and of themselves but rather, they provide some data to develop an hypotheses (Transcript, Volume II, pg. 88, lines 5-13, DE 217). Dr. DiCaprio did offer the opinion that, using the available data and making a prediction based on that data, MDMA is five times as potent as methylene for pharmacological end points and, Ethylone is likely to be the same potency as methylone, or possibly somewhat less. Dr. DiCaprio also opined that the potency of buytlone is the same as Ethylone. (Transcript, Volume II, pg. 105, lines 8-23). As to Dibutylone HCI, Dr. DiCaprio opined that it is one of the compounds along with others that might be predicted or expected to be pharmacologically similar to MDMA. (Transcript, Volume II, pg. 106, lines 3-9). He testified that while Dibutylone HCI is similar pharmacologically to MDMA, he could not go so far as to opine that the two substances were substantially similar. (Transcript, Volume II, pg. 112, lines 2-9). As for pharmacological potency, Dr. DiCaprio opined that the available data is too limited to make firm conclusions regarding its relative potency in comparison to either methylone or MDMA. Ultimately, Dr. DiCaprio rendered the opinion that the appropriate marijuana equivalency ratio for Dibutylone HCI should be no more than 100:1.

      The Eleventh Circuit in *United States v. Brey,* 627 F. App'x 775 (11th Cir. 2015), considered the issue of the proper ratio of Ethylone to marijuana under the Guidelines. The Government argued at the sentencing hearing in *Brey*, as in this case, that the 1:500 ratio should apply to Ethylone because the first two factors under the Application Note 6, chemical structure and effect on the user, favored the Government[3], while the third factor, "potency", was an "unknown" that should be considered "neutral" so "the scales tip in favor of the Government". *Id.* at 778. At the sentencing hearing in *Brey*, as here, the

---

[3] The defense stipulated to the government's position regarding the similarity of MDEA and Ethylone as to both chemical structure and effect. 627 F. App'x at 781.

district court heard from two Government experts from the DEA—one chemist and one pharmacologist. *Id.* at 777-78. Dr. Daniel Willenbring testified as an expert in chemistry, as he has testified in this case. *Id.* Dr. Casandra Prioleau testified as an expert in pharmacology. *Id.*

Dr. Willenbring testified in *Brey* that Ethylone and MDEA were very similar in chemical structure and that there is no drug in the Sentencing Guidelines that was a better match for Ethylone than MDEA. *Id.* Dr. Willenbring also noted the one difference between Ethylone and MDEA, the "beta Keto", an oxygen atom added to MDEA to make it Ethylone. *Id.* at 778. Dr. Willenbring has offered the very same testimony in this case and specifically characterized the aforementioned structural difference as minor. Based on this testimony, the district court in Brey concluded that the first factor in application Note 6 favored the Government's argument.

Dr. Prioleau, like Dr. Trecki in this case, testified in *Brey* that Ehtylone is "expected to have a stimulant effect in the central nervous system that is substantially similar to that of MDEA." *Id.* at 778. Dr. Prioleau was not aware of any human or animal studies on the potency of Ethylone, and she admitted that Ethylone could be more potent, less potent than, or as potent as MDEA or methylone. *Id.* As noted above, Defendant's expert, Dr. Dudley, reasoned that because early studies indicated that Ethylone was less potent than methylone, the marijuana equivalency of Ethylone should be less than that of methylone (Defendants' Julius Reason III and Venteria Reason Exhibit 6, DE 178, Exhibit C). But despite Dr. Prioleau's testimony in *Brey* that Ethylone could be less potent than methylone , the district court held, and the Eleventh Circuit affirmed the finding, that MDEA was the most closely related substance to Ehtylone under Application Note 6 to U.S.S.G. § 2D1.1. The Court did not agree with Brey's argument that the lack of evidence of potency was fatal to the Government's position because Application Note 6 does not impose an absolute duty on the Government to produce evidence about all three factors; rather it requires only that the district court consider the three factors "to the extent practical." Application Note 6; *Brey*, 627 F. App'x at 780.

Following the *Brey* opinion, this Court issued an Order in *United States v. Bully*, 15-cr-80068, in which it found that MDEA is the most closely related substance referenced in the Guidelines in structure

12

and effect to Ethylone, and as a result, should carry the same ratio of 1 gram of substance to 500 grams of marijuana.  In *Bully*, this Court relied upon the expert testimony of Dr. Thomas DeBerardino, in the area of chemistry, and upon the testimony of Dr. Jordan Trecki, in the area of pharmacology. Both were employed with the DEA at the time of their testimony. Other courts similarly have found that MDEA is the most closely related substance referenced in the Guidelines in structure and effect to Ethylone and thus, should carry the same ratio of 1 gram of substance to 500 grams of marijuana. *See United States v. Pangourelias*, 14-cr-303-T; *United States v. Chauca*, 14-cr-409-T; *United States v. Palfalvi*, 14-cr-79-FtM038DNF; *United States v. Kuhn*, 14-cr-485-T-26TGW; and, as noted in the Government's Post-Hearing Memorandum at footnote 1 (DE 226), according to the DEA, the courts have also applied the 500 to 1 ratio for Ethylone in *United States v. Hernandez*, 15-cr-20755; *United States v. Kelly*, 15-cr-41; and *United States v. Warner*, 16-cr-16.  At least one other court since *Brey* has adopted methcathinone as the best comparator for Ethylone. *See United States v. Holmes*, 2016 U.S. Dist. LEXIS 54044 (D. Hawaii 2016).

The Court is not aware of, nor have the parties brought to the attention of the Court, any case law or court proceedings wherein a determination was made regarding the appropriate ratio for Dibutylone HCI. Nor has this Court previously addressed the issue.  The Government has, however, put on testimony by a DEA chemist and pharmacologist that was extremely similar to the testimony regarding Ethylone that was presented (and credited) in both the *Bully* and *Brey* cases. The Court finds, based on the testimony by Dr. Willenbring and Dr. Trecki regarding the Application Note 6 factors as they apply to Dibutylone HCI, that the Government's proposed ratio of 500:1 is the appropriate ratio.

Dr. Willenbring's testimony regarding the comparison between Dibutylone HCI and MDMA was similar to his testimony regarding the comparison between Ethylone and MDEA. He opined that both Dibutylone HCI and MDMA share a core structure—phenethylamine—and that both are substituted at the α-position, nitrogen (N) atom, and 3,4-positions. In contrast with these structural similarities, Dr. Willenbring testified that the structural differences, outlined above, were not only minor, but were the sort usually made "to attempt to evade chemical control, a specific listing of substances."  (Transcript, Volume I, pg. 47, lines 6-8, DE 216). The Court finds these conclusions particularly credible. Not only

13

are they the conclusions of an Organic Chemistry Ph.D whose main responsibility at the DEA is the evaluation of substances for their controlled status under the Controlled Substances Act, they are conclusions that cannot be expressed absent unanimous consensus of all other chemists in his unit. Thus, the Court finds that the first factor outlined in Application Note 6—chemical structure—favors the Government.

Dr. Trecki testified that the stimulant effects of Dibutylone HCl on the central nervous system are expected to be substantially similar to MDMA. This testimony was couched because in vivo studies, which would allow for a more scientifically reliable assessment of the relative activity of Dibutylone HCl, have yet to be conducted. Dr. Dudley and Dr. DiCaprio both opined that, in light of this fact, it would be premature to conclude that there is substantial pharmacological similarity between Dibutylone HCl and MDMA.[4] However, Dr. Trecki's testified that his conclusion is supported by collective knowledge including the case report; in vitro studies; and historical information about the drug including structure, modifications made to it, etc. The Court finds that Dr. Trecki's conclusion is more credible than those of Dr. DiCaprio or Dr. Dudley. Not only is Dr. Trecki's opinion the conclusion of a Pharmacology Ph.D whose main responsibility at the DEA is to research and report on various assigned licit or illicit substances, it could not be expressed absent unanimous consensus of all others in his unit. The Court also notes that Dr. Dudley's pharmacological testimony that the effects of Dibutylone HCl are not well characterized enough to inform an analogy to a controlled substance listed in the Guideless was afforded less weight for the reasons discussed *supra*, including that Dr. Dudley does not hold a Pharmacology Ph.D and works in the area of chemical synthesis. Thus, the Court finds that the first factor outlined in Application Note 6—effect on the user—favors the Government.

Dr. DiCaprio and Dr. Dudley also opined about the lack of information regarding potency, given that in vivo studies have yet to be conducted. Dr. Trecki acknowledged in his testimony that potency cannot be determined from an in vitro study. The situation is analogous to that in *Brey*, wherein Dr.

---

[4] The Court notes that despite this alleged dearth of information both Dr. DiCaprio nonetheless went on to compare the pharmacological effects of Dibutylone HCl with those of other substances not listed in the Guidelines.

Prioleau acknowledged that because of a dearth of human or animal studies on the potency of Ethylone, it could be more potent, less potent than, or as potent as MDEA or methylone. *Id.* This ambiguity as to potency was not fatal to the Government's argument in *Brey*. And it is not fatal here. As in *Brey*, the balance tips in favor of the Government because the chemical structure and effect on the user factors favor the Government's argument while the third factor, potency, is neutral.

The Court has considered "to the extent practicable," the following three factors: (1) chemical structure, (2) effect on the user (whether stimulant, depressant, or hallucinogenic), and (3) relative potency of Ethylone and Dibutylone HCI. The Court has considered the arguments and evidence presented by the Government and the Defendant regarding the substance most closely related to Ethylone and Dibutylone under Application Note 6 to U.S.S.G. § 2D1.1. The Court finds that the Government has proven, by a preponderance of the evidence, with reliable and specific evidence that Ethylone is most closely related to MDEA and so should carry the same conversion ratio of 1 gram of substance to 500 grams of marijuana that Dibutylone HCI is most closely related to MDMA and so should carry the same conversion ratio of 1 gram of substance to 380 grams of marijuana. The Court found the testimony of the Government's experts to be credible. The experts were qualified to testify about the matters on which they opined and offered reliable scientific evidence to support their conclusions. With respect to the chemical structure of the substances, the Court found that Dr. Willenbring offered persuasive testimony that Ethylone is substantially similar to MDEA and Dibutylone HCI is substantially similar to MDMA. Similarly, the Court found persuasive Dr. Trecki's conclusions that Ethylone is most similar to MDEA and Dibutylone HCI is substantially similar to MDMA, finding that each substance has a stimulant effect on the central nervous system and a similar phenethylamine core structure and Dibutylone HCI is expected to have a stimulant effect on the central nervous system that is substantially similar to that of MDMA.

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that the Defendants', Julius Reason III, Natashia Thames and Venteria Reason, Objections (DE 196, 175 and 177, respectively) to the Presentence Reports ("PSI") (DE 215, 186 and 208, respectively) and specifically the following objections: Defendant Julius Reason's Objections (DE 196, para. 4) to paragraph 61 and 62 of the PSI

15

(DE 215) in which Defendant Julius Reason III "objects to the 500:1 ratio for Dibutylone HCI and Ethylone"; Defendant Natashia Thames' Objections (DE 175, para. 3) to paragraph 52 of the PSI (DE 186) in which Defendant Thames "objects to the ratio of dibutylone to marijuana (1 to 500)"; and Defendant Venteria Reason's Objections (DE 177, pg. 5) to paragraph 61 of the PSI (DE 208) in which Defendant Venteria Reason objects "to the 500:1 ratio for Dibutylone HCI and Ethylone" are **OVERRULED.**

    **DONE and ORDERED** in Chambers, at West Palm Beach, Florida, this  24th day of February, 2017.

                                                                       _____
                                                                         ROBIN L. ROSENBERG
                                                                         UNITED STATES DISTRICT JUDGE

cc: Counsel of Record